Commonwealth *v.* Jones et al., Appellants.

Argued September 9, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*Renald S. Baratta*, with him *S. Maxwell Flitter*, for appellants.

*Michael V. Franciosa*, First Assistant District Attorney, with him *Charles H. Spaziani*, District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., November 14, 1968:

Defendants Foanio, Tuminello and Jones were convicted and sentenced for establishing a gambling place and conspiracy.

The Commonwealth's case was based primarily on the testimony of two witnesses, Royce Barr and his girl friend Edna Bubba.

Barr testified that in February, 1966, defendant Foanio, in the presence of Mrs. Bubba, stated that he was planning to conduct a dice game at the Easton Italian Home (Club) and that he would like to employ Barr as a bartender and Mrs. Bubba as a waitress. Foanio assured Barr that there was nothing to worry about, "that everything was set up and that I didn't have to worry about the law or anything, that everything was taken care of." Foanio further stated that the profits from the bar would belong to Barr and Mrs. Bubba.

Barr testified that he later attended a meeting at the Club in which the defendants and other persons participated. Barr stated that the conversation was carried on in Italian which he did not understand. At its conclusion, however, one of the people gave Foanio the keys to the Club. At that time Foanio paid for the whiskey then on the premises.

Barr further testified that he and Mrs. Bubba cleaned the Club and opened it the following night. That evening, defendants Jones and Tuminello brought boards onto the premises and fitted them to a pool table, converting it into a dice table.

Barr stated that the following night he saw Tuminello and Jones conduct a crap game on the converted pool table. At one point during the game Tuminello tried to take some of the betting money but Jones said "You can't take nothing out of there until we take it down to Charley Foanio and have him count it."

Barr also stated that there were dice games on each of the following three evenings. On the fourth night, there was no game because Barr informed defendants that he didn't want to get into trouble. Barr and Mrs. Bubba returned the dice boards.

The testimony of Barr was corroborated by Mrs. Bubba in her testimony.

In its charge, the trial court instructed the jury that "the evidence on the Commonwealth's side of the case largely comes from the mouth of Royce Barr. Royce Barr, although not charged as a Defendant in this case, was by his own admissions, as the Court views it, an accomplice. . . . If his testimony is credible . . . he was originally in on the proposition. He was an accomplice. He could have been charged, along with the other Defendants. . . . In a criminal prosecution the uncorroborated testimony of an accomplice may be sufficient to sustain a conviction. However, the jury must consider the corrupt source of an accomplice's testimony, and . . . determine whether the testimony of a witness as an accomplice may be safely relied upon. . . . *Barr's testimony in many respects was corroborated by Mrs. Bubba. So that the Commonwealth does not rely upon the uncorroborated testimony of an accomplice; the Commonwealth does rely upon the testimony of an accomplice corroborated to some extent, and it will be for you to determine to what extent it was corroborated, if at all.*" (Emphasis ours.)

Defendants objected to this charge on the grounds that the testimony of Mrs. Bubba could not corroborate the testimony of Barr. The basis of this objection is that the court failed to characterize Mrs. Bubba as an accomplice whose testimony was subject to the same cautionary charge imposed on Barr's testimony. As an accomplice, her testimony could not be corroborative of his. The objection was overruled, and the jury returned a verdict of guilty on all counts which was sustained by the Court of Quarter Sessions sitting en banc.

This appeal followed.

The trial court found that Barr was an accomplice of defendants because "he was originally in on the proposition. He was an accomplice. He could have

been charged, along with the other Defendants." The Court of Quarter Sessions, sitting en banc, arrived at the same conclusion.

Our case law sets out that an accomplice is one who "knowingly and voluntarily cooperates with or aids another in the commission of a crime." *Commonwealth v. Hurt*, 163 Pa. Superior Ct. 232, 60 A. 2d 828 (1948). He is not a passive bystander who happens to come upon an illegal activity but does not participate in same. *Commonwealth v. Loomis*, 267 Pa. 438, 110 Atl. 257 (1920). Rather, he must with the requisite knowledge and intent join in facilitating the criminal activity.

In our case, Barr was employed by defendants to serve drinks to gaming patrons. His pay was proportional to the profits from this liquor concession. In addition to his bartending duties, he opened the gambling premises, cleaned them after the crap game ended, readied them for the next day, and closed them at night. He was fully aware of the gambling activities and resigned his position only because he feared criminal prosecution. Thus, he had the requisite knowledge, intent and interest to qualify as an accomplice.

The same facts, however, also apply to Mrs. Bubba. Her activities were indistinguishable from those of Barr. She was present when Foanio originally suggested that she and Barr join the gambling operation and she readily consented to do so. Like Barr she observed the crap game and facilitated it by willingly serving liquor and food to defendants and their guests when they gambled. Her pay was proportional to the profits of the liquor concession. Thus, she had a direct and immediate financial interest in the success of the crap game. As a willing party, she helped Barr open, close and clean the premises where the crap game was held. When she decided to end her involvement

in the gambling, she, together with Barr, returned the gambling boards to Foanio. Her guilty knowledge concerning all these activities is best illustrated by her recognition that "we could get in a lot of trouble over it."

Mrs. Bubba was frightened of criminal prosecution. Having knowledge of the illegal gambling which was carried on in her presence, having facilitated the crap game by keeping the gamblers well stocked with food and drink, and having directly profited from the sale of liquor to the "crap shooters," she knew that she was not an innocent party who had stumbled onto an illegal activity. Rather, she was deeply involved in it. No rationale was offered by the trial court, the Court of Quarter Sessions sitting en banc, or the Commonwealth which would distinguish the activities of Barr, who all agree was an accomplice, from those of Mrs. Bubba.

Therefore, the activities of Barr and Mrs. Bubba must be measured by the same standard in determining their potential criminal liability. This leads to the irrefutable conclusion that if Barr was an accomplice, so too was Mrs. Bubba. The court below erred, therefore, in not bringing this to the attention of the jury.

Since she was an accomplice, it was incumbent upon the trial court to instruct the jury that the testimony offered by Mrs. Bubba must be considered as coming from a polluted source, and that it must be carefully scrutinized. *Commonwealth v. Olitsky,* 184 Pa. Superior Ct. 144, 133 A. 2d 238 (1957). The court below, however, failed to instruct the jury on this matter. Moreover, the court committed reversible error in instructing the jury, over defendants' objection, that Mrs. Bubba's testimony may be used to corroborate the testimony of Barr. The testimony of one accomplice

may never be used to corroborate the testimony of another accomplice. *Commonwealth v. Pressel*, 194 Pa. Superior Ct. 367, 168 A. 2d 779 (1961), *Commonwealth v. Finkelstein*, 191 Pa. Superior Ct. 328, 156 A. 2d 888 (1959).

Therefore, we would vacate the judgments of sentence on all indictments and allow a new trial for defendants to be held in accordance with this opinion.

WRIGHT, P. J., and WATKINS and JACOBS, JJ., would affirm on the opinion of Judge BARTHOLD below.