652 A.2d 354

**COMMONWEALTH of Pennsylvania**

v.

**Agustin ROSARIO, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 30, 1994.

Filed Dec. 30, 1994.

242

244

Edward F. Browne, Lancaster, for appellant.

Susan E. Slusser, Asst. Dist. Atty., Lancaster, for appellee Com.

Before ROWLEY, President Judge, and CAVANAUGH, WIEAND, McEWEN, CIRILLO, OLSZEWSKI, BECK, KELLY, and POPOVICH, JJ.

ROWLEY, President Judge:

In this appeal by Agustin Rosario, we consider, inter alia, whether 18 Pa.C.S. § 110 barred appellant's prosecution on murder and conspiracy charges where, pursuant to a plea bargain, the Commonwealth agreed to nol pros those charges in exchange for appellant's guilty plea to a charge of hindering apprehension or prosecution, and the trial judge, who had accepted the guilty plea but who had not yet imposed sentence, sua sponte directed that the plea be withdrawn. The trial court directed the withdrawal of the plea because the pre-sentence report, subsequently received by the court, "disclose[s] a disparity between the circumstances presented to the [trial court at the plea hearing] and the physical facts of [the] case." Under the circumstances of this case, we conclude, for the reasons discussed below, that Section 110 did

not bar appellant's prosecution on murder and conspiracy charges.

Appellant was convicted by a jury of murder in the second degree and criminal conspiracy. The evidence, viewed in the light most favorable to the Commonwealth, reveals the following circumstances underlying those charges. On December 6, 1990, appellant and his brother Edwardo traveled by bus from Lancaster to Marietta in Lancaster County to visit their sister Nancy. That night, appellant and Nancy left Nancy's apartment to walk to a local convenience store to purchase cigarettes. Before arriving at the store, however, they stopped at a local tavern, Stanley's Cafe ("Stanley's"). In Stanley's, they encountered their subsequent victim, Maurice Scott. Nancy sat at the bar next to Scott, with whom she was acquainted, and engaged in conversation with him. Appellant sat on the other side of Nancy. During the encounter, Scott purchased drinks for Nancy and appellant. Before Nancy and appellant left Stanley's, Nancy told Scott that they were on their way to the store to purchase milk for her baby. However, when Nancy and appellant left Stanley's, they immediately returned to Nancy's apartment.

After they returned, present at the apartment were Nancy, her three children, her two brothers, and two acquaintances, James Rice and James Adams. Nancy stated to those present that she was "getting over on" a man at Stanley's and that he would be coming to the apartment with a six-pack of beer. Approximately a half-hour later, Scott arrived at Nancy's house with a six-pack of Old Milwaukee beer he had purchased at Stanley's. Subsequently, Scott furnished more money for another six-pack, and appellant, his brother, Edwardo, and Rice left to purchase the beer. After they returned and the second six-pack was finished, appellant and Nancy tried to coax Scott into giving them money for more beer, but he refused.

Eventually, Scott, who was sitting on the couch, began to doze. The three Rosarios, Nancy, Edwardo, and appellant, then started speaking to each other in Spanish. After the Rosarios had an extended conversation, Nancy told Rice and

Adams to go into one of the bedrooms for a few minutes. When they complied, one of the Rosarios closed the door between the bedroom and the living room. Adams and Rice then heard thumping noises coming from the living room. At one point, the door opened and Rice observed Nancy hitting Scott on the head with a large plastic container. Either appellant or his brother pulled the door closed. After a few minutes, appellant entered the bedroom and said, "I never did anything like this before." When Adams asked him to clarify his statement, appellant went back into the living room. Edwardo then entered the bedroom and stated that Nancy was stabbing Scott. Adams looked through the doorway and observed Nancy repeatedly stabbing Scott in the chest area. Edwardo went back into the living room, and both he and appellant stood near Nancy.

Adams and Rice ran out the back door of the apartment, walked down the street, and hid in an alley. Shortly thereafter, Adams observed Scott's automobile being driven away from behind Nancy's apartment building. The next morning, one of Scott's friends discovered Scott's car in an alley near Stanley's. When he looked inside, he saw Scott's body in a prone position on the front seat of the car.

That afternoon, Corporal Raymond E. Solt of the Pennsylvania State Police, in the course of his investigation into Scott's death, encountered appellant, Edwardo, Nancy, and Nancy's neighbor outside Nancy's apartment building. Corporal Solt asked appellant and his brother to accompany him to an area where other officers and investigators had gathered. At that location, Trooper Joseph Joy asked appellant and his brother if they would accompany him to the police station to be interviewed, and they agreed. Appellant and his brother accompanied Trooper Joy and a Marietta police officer to the Marietta police station, where appellant was interviewed by Trooper Joy and Edwardo was interviewed by Trooper Donald Snyder.

During his interview, appellant told Trooper Joy that his sister, Nancy, had introduced him to an older gentleman at Stanley's the previous night. He stated that he did not

remember the man's name and that he did not see the man again after he and his sister left the bar. He told Trooper Joy that after leaving the bar, he returned with Nancy to her apartment, where he remained the rest of the night. He stated that he learned of Scott's death the following morning.

At one point, Trooper Joy left the room and spoke with Trooper Snyder. According to Trooper Snyder, Edwardo claimed that other persons were present in Nancy's apartment when Nancy and appellant returned from Stanley's. When Trooper Joy told appellant about that information, which contradicted appellant's prior statements, appellant said that he had forgotten that there were two other men in the apartment. He told Trooper Joy that those two men left Nancy's apartment prior to the time he and Nancy left to go to the store.

Subsequently, Trooper Joy again left the room and spoke with other investigators. When he returned, he told appellant that those investigators had located people who claimed that Scott was present at Nancy's apartment during the time period that appellant and his brother were there. Appellant denied being present at the apartment when Scott was there. He opined, however, that perhaps something had happened while he was sleeping. Trooper Joy advised appellant of the criminal nature of withholding information and obstructing an investigation, and appellant continued denying that he was present at the apartment when Scott was there. When appellant informed Trooper Joy that he intended to leave the police station, Trooper Joy placed him under arrest for hindering apprehension or prosecution. Appellant was released approximately an hour later, without being charged with hindering apprehension or prosecution, after Trooper Joy engaged in a discussion with an unidentified person from the District Attorney's Office. The substance of that discussion is not disclosed in the record.

Later that night, for reasons also not disclosed by the record, appellant arrived at the home of Brenda Warren in Lancaster. Trooper Snyder and Trooper Kevin Dykes were present at Ms. Warren's home. Trooper Dykes had been

requested to go to that residence for the purpose of conducting an interview. The record does not reveal the identity of the person who made that request or the identity of the person to be interviewed. However, appellant was transported to the state police barracks where he was questioned again about the events surrounding Scott's death until the early morning hours of December 8. While at the police barracks, appellant admitted to Trooper Dykes that he had not been truthful with Trooper Joy. Appellant told Trooper Dykes that, contrary to his earlier statement, he had been at Nancy's apartment with Scott on the night of the murder. He stated that after everyone drank beer and talked for a few minutes, Nancy asked Rice and Adams to accompany her into the bedroom. Appellant stated that he remained in the living room with his brother and Scott. He then stated that Nancy, Rice, and Adams returned from the bedroom, and that one of them had turned up the volume on the stereo in the bedroom. Appellant told Trooper Dykes that he went into the bedroom to turn down the volume, and that when he returned from the bedroom, he observed Nancy stabbing Scott in the chest. He stated that she stabbed Scott several times in the chest and cut his throat. Appellant also told Trooper Dykes that when the victim reached back to grab Nancy's arm, Edwardo grabbed the victim's arm. He admitted that he helped Edwardo remove Scott's body from the apartment and that he drove Scott's car, with the body inside, down an alley. He further admitted that he cleaned Scott's blood from the couch.

The same day that appellant gave the above statement to Trooper Dykes, Trooper Snyder filed a criminal complaint charging appellant with criminal homicide and conspiracy. On March 12, 1991, the District Attorney's Office filed an information charging appellant with the same crimes. Subsequently, however, appellant entered into a negotiated plea agreement with the Commonwealth in which he agreed to plead guilty to a charge of hindering apprehension or prosecution in exchange for the Commonwealth's agreement to nol pros the homicide and conspiracy charges. In that regard, the parties appeared

before the Honorable Michael J. Perezous on May 13, 1991. Because hindering apprehension or prosecution had not been included as a charge in the information filed by the District Attorney, and because it is not a lesser included offense of either of the crimes charged, appellant waived the necessity of the Commonwealth formally amending the information to include the charge of hindering apprehension or prosecution. After a thorough colloquy conducted by Judge Perezous, appellant entered a guilty plea to the charge of hindering apprehension or prosecution. Judge Perezous accepted appellant's plea and directed that a pre-sentence investigation be completed or updated. After receiving the pre-sentence reports, however, Judge Perezous, instead of imposing sentence, directed that the plea be withdrawn[1] and that appellant proceed to trial on the charges of criminal homicide and conspiracy.[2]

Initially, the trial court ordered that appellant, Edwardo, and Nancy be tried together. However, the cases were later severed, and appellant proceeded to trial alone. On the basis of the evidence discussed above, the jury found appellant guilty of murder in the second degree and criminal conspiracy. After appellant's post-trial motions in arrest of judgment and for a new trial were denied, and judgment of sentence was imposed, appellant filed this timely appeal.

Appellant first contends that his prosecution and conviction

1. During the same proceeding at which appellant entered his guilty plea, his brother also entered a guilty plea to a charge of hindering apprehension or prosecution. At a different proceeding before Judge Perezous, appellant's sister, Nancy, entered a guilty plea to a charge of murder in the third degree. As in the present case, Judge Perezous directed that Nancy's and Edwardo's pleas be withdrawn. Both Edwardo and Nancy appealed, raising as error the trial court's decision to order the withdrawal of their pleas. *See Commonwealth v. Edwardo Rosario*, 432 Pa.Super. 668, 633 A.2d 1224 (1993) (unpublished memorandum); *Commonwealth v. Nancy Rosario*, 418 Pa.Super. 196, 613 A.2d 1244 (1992), *appeal granted*, 535 Pa. 646, 633 A.2d 151 (1993).

2. Prior to the commencement of trial, the Commonwealth filed a motion to amend the information to include a charge of hindering apprehension or prosecution. The trial court denied the Commonwealth's motion.

for murder and conspiracy were barred by 18 Pa.C.S. § 110.[3] Section 110 states, in relevant part, as follows:

**§ 110. When prosecution barred by former prosecution for different offense**

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title ... and the subsequent prosecution is for:

\* \* \* \* \* \*

(ii) any offense based on the same conduct or arising from the same criminal episode, if such episode was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense. . . .

18 Pa.C.S. § 110(1)(ii). The relevant provision of 18 Pa.C.S. § 109, referred to above, states:

There is a conviction if the prosecution resulted in a judgment of conviction which has not been reversed or vacated, a verdict of guilty which has not been set aside and which is capable of supporting a judgment, or a plea of guilty accepted by the court. In the latter two cases, failure to enter judgment must be for a reason other than a motion of the defendant.

*Id.* § 109(3).

Because appellant, now represented by new counsel, is raising this precise issue for the first time on appeal, he does so in the context of trial counsel's alleged ineffectiveness. In his post-trial motions, appellant argued that his prosecution was barred by constitutional double jeopardy principles. He

**3.** After the trial court ordered that appellant's guilty plea be withdrawn, he filed a Motion to Reconsider and Enforce Plea Agreement which, if granted, would have resulted in a dismissal of the murder and conspiracy charges.

does not pursue that argument on appeal, however. Instead, he argues that counsel was ineffective for failing to raise the Section 110 argument in the trial court.

■ Our standard of review of ineffectiveness claims is as follows:

> In reviewing a claim of ineffective assistance of counsel, we must first determine whether the issue underlying the claim is of arguable merit. *Commonwealth v. Evans*, 489 Pa. 85, 413 A.2d 1025 (1980). If the claim lacks merit, our inquiry ceases, as counsel will not be deemed ineffective for failing to pursue a baseless or meritless issue. *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728 (1987). If, however, the claim has merit, we must then determine whether the course of action chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Hentosh*, 520 Pa. 325, 554 A.2d 20 (1989). Finally, appellant must show that counsel's ineffectiveness so prejudiced his case that he was denied a fair trial. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

*Commonwealth v. Rollins*, 525 Pa. 335, 344, 580 A.2d 744, 748 (1990). Thus, we must determine, initially, whether appellant's Section 110 claim has "arguable merit".

■ Appellant's claim that the prosecution was barred is based upon the events surrounding the entry of his guilty plea and the trial court's subsequent order directing withdrawal of that plea. At the plea colloquy, the prosecutor explained to the trial court the factual basis of the plea as follows:

> [O]n the morning of December 7, 1990, at 324 Front Street, apartment three, in Marietta, Pennsylvania, Nancy Rosario, that's the resident—Nancy Rosario, the sister of these two defendants—approximately one to two o'clock in the morning killed an individual by the name of Maurice Scott by stabbing him multiple times in the body.

> The role of these two defendants, who happened to be visiting her at that particular time, their being residents of the City of Lancaster, were that they helped dispose of his body after he was killed.

They dragged the body through the apartment, through the backyard and then placed him in his own car, placed the victim in the victim's own car and then they drove the car somewhat [sic] down the street, a few blocks away from the residence where the offense occurred.

Then they both returned to the residence and helped their sister clean up afterwards, wiping up blood off the sofa where the offense occurred and then off the floor.

The trial court ordered the withdrawal of the plea on the basis of the following:

The pre-sentence reports have now been submitted to the Court. In our judgment, these reports disclose a disparity between the circumstances previously presented to the Court and the physical facts of the case. We therefore conclude that no factual basis for the guilty pleas exists and that the sentence concessions, reduction of charges or dismissal of other counts are not warranted.

The additional facts contained in the pre-sentence reports indicate that the public interest in the effective administration of justice would not be served by accepting the guilty pleas previously tendered. We make this determination under our responsibilities pursuant to the standards relating to pleas of guilty of the American Bar Association project on Minimum Standards for Criminal Justice.

The trial court also concluded that it had authority to direct withdrawal of appellant's plea pursuant to Pennsylvania Rule of Criminal Procedure 320. Rule 320 provides the following:

At any time before sentence, the court may, in its discretion, permit or direct a plea of guilty to be withdrawn and a plea of not guilty substituted.

Appellant relies, in support of his argument, upon a perceived conflict between Section 110 and Rule 320. Although Rule 320 permits the trial court, in its discretion, to direct that a guilty plea be withdrawn, Sections 109 and 110 of the Crimes Code prohibit a prosecution for an offense which is based on the same conduct or arises from the same criminal episode as an offense for which the trial court had previously "accepted"

a defendant's guilty plea. It is notable that, prior to the enactment of Sections 109 and 110, by the legislature, the Supreme Court held that Rule 320 authorized the trial court, in its discretion, to direct that a defendant's guilty plea be withdrawn. *Commonwealth v. Metz*, 425 Pa. 188, 228 A.2d 729 (1967) (trial judge ordered plea to be withdrawn after defendant stated that he did not understand that he had pleaded guilty to murder).

This Court has recently addressed the same argument in a case involving, not coincidentally, the identical issue presented by the case at bar. In *Commonwealth v. Nancy Rosario*, 418 Pa.Super. 196, 613 A.2d 1244 (1992), *appeal granted*, 535 Pa. 646, 633 A.2d 151 (1993), a panel of this Court considered an appeal by appellant's sister Nancy concerning the propriety of the trial court's order directing the withdrawal of her guilty plea to the charge of third-degree murder. Nancy Rosario appealed on the basis that the trial court's sua sponte order directing withdrawal of the guilty plea violated constitutional double jeopardy principles as well as Sections 109 and 110. This Court affirmed the trial court's order, holding, in relevant part:

> [W]here the judgment of conviction, guilty verdict or accepted plea of guilty continues to stand, there is a conviction for purposes of [sections 109 and 110]. But, if there is a reversal or vacation of the judgment, a setting aside of the verdict or the striking of a guilty plea, there is no conviction for purposes of [sections 109 and 110].
>
> \* \* \* \* \* \*
>
> [W]here section 109 of the Crimes Code speaks of a "guilty plea accepted by the court," it is speaking of a plea that stands and has not been stricken and does not speak to the power of the court to strike a guilty plea before sentence. In the instant case, appellant's plea was accepted and then withdrawn due to a lack of a factual basis to support the plea. In light of the above discussion, we find that the appellant's plea was not "accepted by the court" as those terms are defined in section 109.

*Id.,* 418 Pa.Super. at 205, 613 A.2d at 1249. Citing the Comments to section 1.09 of the Model Penal Code, the Court determined that the perceived conflict between Section 109(3) and Rule 320 is eliminated if the phrase "a plea of guilty accepted by the court" is interpreted as a plea which has not been stricken and still stands.[4]

Appellant contends that the Court's decision in *Nancy Rosario* is erroneous and contrary to other decisions of this Court, specifically, *Commonwealth v. Branch,* 417 Pa.Super. 571, 612 A.2d 1085 (1992). In *Branch,* a panel of this Court held that constitutional double jeopardy principles were not violated where the trial court deferred acceptance of the defendant's guilty pleas until it could review a report to be prepared by the Probation Office, and, upon reviewing that report, the court rejected the terms of the plea bargain and required the defendant to proceed to trial on all charges. Appellant relies on this Court's decision in *Branch* in support of his position because in that decision we stated that if the trial court had accepted the defendant's pleas, jeopardy would attach and the trial court could not, absent manifest necessity, later reject the pleas. Appellant recognizes that *Branch* involved only a constitutional double jeopardy claim; however, without citing any authority, he contends that Section 110 provides greater protection than constitutional double jeopardy provisions, and he "sees no reason why the analysis would differ interpreting the attachment of jeopardy under the statutory principles of double jeopardy." Constitutional double jeopardy principles and the provisions of the compulsory joinder statutes, i.e., Sections 109 and 110, are not interchangeable, however. The Court's decision in *Branch* is not controlling in the present case because that decision did not involve the application of Section 110 to the factual circumstances presented herein.

4. In his appeal to this Court, appellant's brother Edwardo raised an issue concerning the propriety of the trial court's decision to direct the withdrawal of his plea. It is not apparent, however, whether Edwardo specifically raised the bar of Section 110. This Court held that Rule 320 gives the trial court discretion to direct the withdrawal of a guilty plea, and, under the circumstances of that case, the trial court did not abuse its discretion.

It is true that this Court has repeatedly said that a guilty plea constitutes a conviction for purposes of Sections 109 and 110. *See Commonwealth v. McPhail,* 429 Pa.Super. 103, 631 A.2d 1305 (1993); *Commonwealth v. Kotz,* 411 Pa.Super. 319, 601 A.2d 811 (1992); and *Commonwealth v. Caden,* 326 Pa.Super. 192, 473 A.2d 1047 (1984). The Court's decisions in *McPhail* and *Caden* are distinguishable from the present case, however, because in those cases the guilty pleas were not stricken by the trial court. The Court therefore had no need to discuss the application of Rule 320 to the circumstances presented by those cases. The Court's holdings in those cases are also not relevant to the issue considered in this case and in *Nancy Rosario.* In *McPhail,* the Court held that the defendant's prosecution and conviction in Allegheny County on drug charges was not barred under Section 110 by the defendant's prior entry of a guilty plea to similar charges in Washington County, even though the events underlying the charges in each county were part of the same criminal episode. The Court determined that Section 110 did not bar the prosecution for offenses occurring in Allegheny County because those offenses and the offenses occurring in Washington County were not within the jurisdiction of a single court.

In *Caden,* the Court held that the defendant's guilty plea in Montgomery County to charges of receiving stolen property and possession of a controlled substance did not preclude his subsequent prosecution and conviction in Delaware County on charges of burglary, criminal trespass, theft by unlawful taking, and criminal mischief. Those charges arose after appellant stole a flatbed truck from a business in Delaware County and was apprehended in Montgomery County in possession of a stolen tractor which he was transporting on the flatbed truck. This Court determined that Section 110 did not bar the subsequent prosecution because the offenses occurring in each county were not within the jurisdiction of a single court and the charges did not arise from the same criminal episode. Accordingly, our Court's conclusion in *Nancy Rosario* that a guilty plea constitutes a conviction only if it continues to stand is not inconsistent with the decisions in *McPhail* and *Caden.*

Although not directly on point, *Kotz* is more relevant to the present case. In *Kotz*, the defendant was charged by Criminal Information No. 2712 of 1990 with aggravated assault, simple assault (two counts), and recklessly endangering another person. He pleaded guilty to one count of simple assault, and the Commonwealth nol prossed the other charges. Subsequently, the defendant was charged by Criminal Information No. 2711 of 1990 with simple assault (two counts) and recklessly endangering another person. Again, the defendant pleaded guilty to one count of simple assault. The trial court imposed sentence on both charges on the same day. Specifically, the trial court imposed a term of imprisonment of six to twenty-three and a half months at No. 2712 and a consecutive term of imprisonment of four to twenty-three and a half months at No. 2711. Thereafter, the defendant filed a motion to withdraw his guilty plea at No. 2711. Although appellant did not challenge the plea entered at No. 2712, the trial court ordered that his pleas to both charges be withdrawn and that he stand trial on all charges contained in both informations. The defendant filed an appeal from the trial court's order, and this Court reversed.

In reversing, this Court stated:

[W]hen accepted and entered by a court, a plea of guilty is the equivalent of a conviction by the verdict of a jury.... [U]nder established case law, a trial judge's authority over a *verdict* is limited to consideration of post-verdict motions in arrest of judgment or the grant of a new trial. [*Commonwealth v. ]Stark*, [526 Pa. 1, 584 A.2d 289 (1990) ]; [*Commonwealth v.] Parker*, [305 Pa.Super. 516, 451 A.2d 767 (1982) ]. Similarly, the withdrawal of a guilty plea is *initiated by application of the defendant. Kercheval*[ *v. United States*, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927) ]; Pa.R.Crim.P. 320 & 321; P.L.E. Criminal Law, § 218. Absent such an application/motion by the defendant, a guilty plea, which is spoken of in terms of a verdict of guilty, may not be removed by a trial court *sua sponte*. See *Stark*, supra; *Parker*, supra; cf. *Commonwealth v. Walker*, 460 Pa. 658, 334 A.2d 282, 284 (1975).

*Kotz,* 411 Pa.Super. at 325–26, 601 A.2d at 814–15 (emphasis in original). Although this Court's holding may appear to preclude a trial court from sua sponte rejecting a guilty plea in any situation, it is instructive that in that case, unlike the present case and *Nancy Rosario,* the trial court had already sentenced the defendant on the pleas. Therefore, the trial court not only ordered withdrawal of the pleas, but the court also, sua sponte, vacated the judgments of sentence.

The decision in *Kotz* is also distinguishable from the present case because in *Kotz,* the trial court did not provide a valid reason for ordering withdrawal of the plea. In the present case, on the other hand, the disparity between the factual basis of the plea presented to the court at the plea hearing and the factual statement set forth in the pre-sentence report provides a valid reason for the trial court's withdrawal of the plea.

■ Furthermore, although the Court in *Kotz* relied upon *Commonwealth v. Stark,* 526 Pa. 1, 584 A.2d 289 (1990), and *Commonwealth v. Parker,* 305 Pa.Super. 516, 451 A.2d 767 (1982), in support of its conclusion, those cases are distinguishable in that they involve the trial court's decision to change a previously rendered verdict of guilty to a verdict of not guilty. A guilty verdict and a guilty plea cannot be equated in all circumstances and for all purposes. For example, absent prejudice to the Commonwealth, a defendant can seek withdrawal of his plea prior to sentencing on any fair and just basis, including, under some circumstances, a mere assertion of innocence. *See Commonwealth v. Forbes,* 450 Pa. 185, 299 A.2d 268 (1973); *Commonwealth v. Ortiz,* 334 Pa.Super. 117, 482 A.2d 1110 (1984); *Commonwealth v. McCall,* 320 Pa.Super. 473, 467 A.2d 631 (1983); *but see Commonwealth v. Cole,* 387 Pa.Super. 328, 564 A.2d 203 (1989) (*en banc* ) (affirming denial of request to withdraw plea and questioning wisdom of rule allowing withdrawal of plea on basis of mere assertion of innocence); *Commonwealth v. Iseley,* 419 Pa.Super. 364, 615 A.2d 408 (1992), *appeal denied,* 534 Pa. 653, 627 A.2d 730 (1993) (same). However, a defendant seeking to vacate a guilty *verdict* cannot under any circumstance rely upon a mere

assertion of innocence. Indeed, if that were so, it is likely that very few guilty verdicts would stand. Therefore, a guilty plea and a guilty verdict are not equivalent for *all* purposes.

■ Moreover, the Court in *Kotz* relied upon Rule 320 in support of its conclusion that the withdrawal of a guilty plea is always initiated by the defendant's application. That conclusion, however, is not in accord with the provision in Rule 320 which grants a trial court discretion to "permit *or direct*" the withdrawal of a guilty plea. In this regard, we reject appellant's assertion that "Rule 320 is a mere conduit enabling the Court to utilize its discretion in ruling on [a defendant's] motion [to withdraw a guilty plea]." The plain language of Rule 320 belies appellant's assertion. The rule provides that a trial court may permit *or direct* that a guilty plea be withdrawn. The emphasized language would be unnecessary if, as appellant contends, Rule 320 merely authorizes the trial court to grant a defendant's motion to withdraw a plea. This Court's decision in *Nancy Rosario* recognizes the perceived inconsistency between Section 110 and Rule 320 and resolves that inconsistency in a logical and well-reasoned manner.

We also note that this Court has held that constitutional double jeopardy principles are not violated where a trial judge delays acceptance of a proffered guilty plea until a pre-sentence investigation is conducted and the results are reviewed by the judge. *Commonwealth v. Branch, supra* 417 Pa.Super. 571, 612 A.2d 1085. If we were to hold that a trial judge cannot direct the withdrawal of a plea prior to sentencing on the basis that information learned pursuant to a pre-sentence investigation renders the factual basis for the plea inadequate, trial judges could, as a matter of course, defer acceptance of every plea tendered until immediately prior to sentencing. To permit the trial court to defer its acceptance of a plea while denying the trial court authority to order withdrawal of a plea under these circumstances would be to exalt form over substance.

■ For these reasons, we follow our decision in *Nancy Rosario,* and, accordingly, we hold that the trial court's sua sponte order, directing withdrawal of appellant's guilty plea,

did not constitute error. Therefore, appellant's prior counsel will not be deemed to have been ineffective for failing to argue that his prosecution for murder and conspiracy was barred by Section 110.

Because we have concluded that the trial court did not err in ordering the withdrawal of appellant's guilty plea, we next address appellant's claims concerning (1) the sufficiency of the evidence, (2) the admission into evidence of a statement made by appellant before he was advised of his *Miranda*[5] rights, (3) trial counsel's alleged ineffectiveness for failing to seek suppression of a statement made by appellant after he was subjected to physical coercion, (4) trial counsel's failure to object to certain hearsay statements, and (5) his failure to preserve for appeal the trial court's admission, over objection, of other hearsay statements.

On the basis of the Commonwealth's evidence, outlined above, the jury found appellant guilty of murder in the second degree and criminal conspiracy. Appellant contends that the evidence was insufficient to support those verdicts. In considering a sufficiency of the evidence claim, our standard of review is well-established:

> [W]e must determine "whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense[ ] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Jackson,* 506 Pa. 469, 472–473, 485 A.2d 1102, 1103 (1984). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). In addition, the facts and circumstances established by the Commonwealth "need not

**5.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

be absolutely incompatible with defendant's innocence, but the question of any doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977), quoting *Commonwealth v. Libonati,* 346 Pa. 504, 508, 31 A.2d 95, 97 (1943).

*Commonwealth v. Calderini,* 416 Pa.Super. 258, 260–61, 611 A.2d 206, 207 (1992), *appeal denied,* 533 Pa. 656, 625 A.2d 1190 (1993).

Specifically, appellant argues that the evidence was insufficient to prove that he was an accomplice to a murder committed during the perpetration of a robbery or that he agreed to aid another in the perpetration of a robbery. Although appellant correctly asserts that there is no evidence that he actively participated in the actual stabbing of Scott, we find unpersuasive his assertion that his role was merely that of being present at the time of the murder and of helping to dispose of the body and other evidence after the murder was committed. As we stated in *Calderini:*

"A person is legally accountable for the conduct of another when he is an accomplice of that person in the commission of [an] offense." *Commonwealth v. Orlowski,* 332 Pa.Super. 600, 616, 481 A.2d 952, 960 (1984). See: 18 Pa.C.S. § 306.

An accomplice is one who "knowingly and voluntarily cooperates with or aids another in the commission of a crime." *Commonwealth v. Carey,* 293 Pa.Super. 359, 373, 439 A.2d 151, 158 (1981). See: 18 Pa.C.S. § 306. See also: *Commonwealth v. Jones,* 213 Pa.Super. 504, 508, 247 A.2d 624, 626 (1968). To be an accomplice, "one must be an active partner in the intent to commit [the crime]." *Commonwealth v. Fields, supra* 460 Pa. [316] at 319–320, 333 A.2d [745] at 747 [1975]; *Commonwealth v. McFadden,* 448 Pa. 146, 150, 292 A.2d 358, 360 (1972). "An [accomplice] must have done something to participate in the venture." *Commonwealth v. Flowers,* 479 Pa. 153, 156, 387 A.2d 1268, 1270 (1978).

*Commonwealth v. Brady,* 385 Pa.Super. 279, 284–285, 560 A.2d 802, 805 (1989). However, "[t]he least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice." *Commonwealth v. Graves,* 316 Pa.Super. 484, 489–490, 463 A.2d 467, 470 (1983). See: *Commonwealth v. Coccioletti,* 493 Pa. 103, 109, 425 A.2d 387, 390 (1981). *Id.,* 416 Pa.Super. at 262–63, 611 A.2d at 208.

■ The evidence admitted at trial, viewed in the light most favorable to the Commonwealth, reveals that appellant and his sister Nancy left her apartment with one stated purpose, they left Stanley's with a different stated purpose, and, after leaving Stanley's, they immediately returned to Nancy's apartment without accomplishing either purpose; the attack on Scott did not occur until after he refused requests by appellant and Nancy that he furnish money for more beer; immediately prior to the attack on Scott, appellant engaged in a discussion with his siblings in Spanish, a language not understood by the other persons present in the apartment; during the attack appellant stated to those other persons that he had never done anything like that before; after making that statement, appellant returned to the living room and stood by his sister as she stabbed Scott; appellant himself drove the deceased's car, containing the body, away from the scene; appellant helped his siblings clean the apartment; and appellant initially lied to the police about his knowledge of the crime. Although the evidence was largely circumstantial, it was nonetheless sufficient for the jury to have found that appellant cooperated and conspired with his siblings in a plan to commit a robbery, a felony which resulted in the victim's death.

Appellant's next two issues concern the statements he made to the police on December 7, 1990 and December 8, 1990. He first contends that the trial court erred in denying his motion to suppress a portion of the statement he made on December 7, 1990. Next, he asserts that trial counsel was ineffective for failing to seek suppression of the statement he made on December 8, 1990. As more fully discussed above, *see supra*

pp. 357–58, appellant was interviewed by Trooper Joy at the Marietta police department on December 7 for approximately three and a half hours. In the course of that interview, appellant continually denied any knowledge of Scott's murder. When confronted with allegations that he was at Nancy's apartment when Scott was murdered,[6] appellant suggested that perhaps something had happened while he was sleeping. At the conclusion of his statement, appellant was arrested for hindering apprehension or prosecution.

Later that night, appellant went to a private home in Lancaster, where he met Trooper Dykes. He accompanied Trooper Dykes to the state police barracks, and he was questioned until the early morning hours of December 8. In that statement, appellant admitted to being untruthful in this earlier statement to Trooper Joy, and he admitted to witnessing Scott's murder. He denied any involvement in that murder, however.

■ We first consider appellant's contention that the trial court erred in denying his motion to suppress a portion of his statement made to Trooper Joy on December 7. Our standard of review is as follows:

> In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

6. At the suppression hearing, Trooper Joy testified that he confronted appellant with allegations that the murder occurred at Nancy's apartment and that appellant was present at the apartment when the murder occurred. At trial, however, Trooper Joy was not as specific; he merely testified about allegations that appellant was in Nancy's house "when there was activity going on within the house." Notes of Testimony, 9/4/91, at 175.

*Commonwealth v. Foster,* 425 Pa.Super. 61, 65, 624 A.2d 144, 147 (1993) (quoting *Commonwealth v. Fromal,* 392 Pa.Super. 100, 111, 572 A.2d 711, 717 (1990), *appeal denied,* 527 Pa. 629, 592 A.2d 1297 (1990)). Appellant contends that the statement at issue was subject to suppression because the police did not advise him of his *Miranda* rights prior to questioning him. Because the record reveals that appellant was not in custody when he made the statement, we find no error in the trial court's ruling.

It is well-settled that the police are only required to advise a person of his *Miranda* rights if that person is subjected to custodial interrogation.

The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.

*Id.,* 425 Pa.Super. at 67, 624 A.2d at 147 (quoting *Commonwealth v. Chacko,* 500 Pa. 571, 577, 459 A.2d 311, 314 (1983)).

■ Appellant does not challenge the admissibility of the entire statement he made to Trooper Joy on December 7, and such a challenge would not be successful. Appellant was not a suspect in the crime when he was initially interviewed by Trooper Joy, and he was not the focus of the investigation. The police merely thought that appellant might have information about the murder because he was in the vicinity. Trooper Joy repeatedly informed appellant that he was not under arrest, and appellant acknowledged his understanding of that fact. The interview did not take place in a coercive atmosphere, as it was conducted in an employee lunchroom. Appellant was not restrained in any way, and he was not searched.

■ Appellant does, however, challenge that portion of his statement made during the twenty-minute period between the time that Trooper Joy received information that appellant was present in Nancy's apartment when the murder occurred

there and when Trooper Joy placed appellant under arrest. Appellant argues, "The reasonable conclusion is that once Trooper Joy heard of the information supplied by another person, a non-custodial setting changed into one in which *Miranda* warnings were prerequisite, as Joy clearly believed Appellant was covering up, and attempted to get him to incriminate himself." The relevant inquiry, however, is whether appellant was physically deprived of his freedom or whether he reasonably believed that his freedom of movement was restricted. When Trooper Joy confronted appellant with the allegation that he was in his sister's apartment when the murder occurred, appellant voiced his intention to leave the police station. If appellant believed he was free to leave at that point, he could not also have believed that he was in custody. This is especially true considering that appellant does not claim that he was in custody prior to the time when Trooper Joy received information that he was present at the scene of the murder. Accordingly, we conclude that appellant was not in custody when he made the statements at issue. Therefore, the trial court did not err in denying his motion to suppress.

■ Moreover, even if *Miranda* warnings were required, the portion of the statement challenged by appellant was merely cumulative of the portion of his statement which he does not challenge. After Trooper Joy informed appellant about the allegations that he was in Nancy's apartment when Scott was murdered, appellant continued to deny any knowledge of the crime, as he had been doing for over three hours. The only difference between his earlier assertions and those made during the relevant twenty-minute period was appellant's suggestion that perhaps something had happened in the apartment while he was sleeping. Therefore, assuming arguendo that the trial court erred in denying appellant's motion to suppress, that error was harmless. *See Commonwealth v. Rodriguez*, 533 Pa. 555, 560–61, 626 A.2d 141, 145 (1993) (discussing harmless error standard).

Next, appellant contends that counsel was ineffective for failing to seek suppression of the statement he made to

Trooper Dykes on December 8. He argues that "he was beaten and restrained at [a third-party's] house in the presence of state police officers and forced to make inculpatory statements to them. In a nutshell, he is charging that the police used a private citizen or citizens as agents in order to coerce a confession." Because there has been no hearing on appellant's claim of ineffectiveness, the validity of his disturbing allegations has not been explored. Nonetheless, because the record reveals that trial counsel had a reasonable basis for not seeking suppression of appellant's statement, we conclude that he is not entitled to relief on his ineffectiveness claim.

In his motion to withdraw from representation of appellant, filed in the trial court, trial counsel stated that he knew of the alleged circumstances surrounding the statement, but that he did not seek its suppression because it was not, in his opinion, prejudicial to appellant. The statement was not only not prejudicial to appellant, but it also formed the basis of appellant's defense at trial. In light of the overwhelming evidence that appellant was present in Nancy's apartment when Scott was murdered, counsel reasonably chose to argue to the jury that appellant, although present when the murdered occurred, was not involved in the murder, but rather, was surprised by his sister's senseless and unexpected attack. The statement given by appellant on December 8 supported that theory because in that statement appellant admitted being present and helping his sister after the murder, but denied any involvement in a plan to rob or murder Scott. Not only did that statement support trial counsel's strategy, but, because appellant did not testify at trial, it was the only support for the defense theory. A reasonable decision by counsel with regard to a matter of trial strategy will not provide a basis for a finding of ineffectiveness. *See Commonwealth v. Blassingale*, 398 Pa.Super. 379, 398, 581 A.2d 183, 192 (1990). Appellant does not suggest that the defense strategy was unreasonable, and, in light of the Commonwealth's evidence, such a suggestion would be meritless.

Furthermore, as discussed above, appellant's statement of December 7, 1990 was properly admitted into evidence. The

Commonwealth's evidence clearly revealed that certain portions of that statement were not accurate. If the jury had *not* been told that appellant recanted and corrected those portions of the statement the following day, the inference of guilt flowing from the inaccuracies contained in the first statement would most likely have been more damaging to appellant's case than the admission of the second statement. In fact, counsel's ineffectiveness would have been more arguable if he had successfully moved for suppression of the second statement. In that situation, the jury would have been told that the murder occurred in Nancy's apartment, that two neutral witnesses observed appellant in the living room of the apartment when the murder occurred, and that appellant himself admitted to being in the apartment on the night of the murder but denied any knowledge of it.[7] The potential prejudice to appellant's case in that situation is apparent.

In sum, we cannot say that counsel was ineffective for failing to seek suppression of appellant's statement of December 8, regardless of how it was obtained, in light of the fact that it formed the basis for his defense. Although we would not condone the conduct alleged by appellant if those allegations are true, suppression was not an appropriate remedy as it would have harmed appellant's position at trial.

Finally, we address appellant's contention that counsel was ineffective for failing to object to certain hearsay statements and for failing to preserve for review purposes the trial court's admission, over objection, of other hearsay statements. In his brief, appellant lists no less than fourteen statements which he claims should not have been admitted.

Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted therein. *See Commonwealth v. Fielder*, 417 Pa.Super. 455, 464, 612 A.2d 1028, 1032–33 (1992), *appeal denied*, 533 Pa. 630, 621 A.2d 577 (1993). Most of the statements challenged by appellant were

---

7. Counsel could have reasonably concluded that the jury would not have been persuaded by appellant's explanation to the police that perhaps he had slept through Scott's arrival at the apartment, Nancy's attack on Scott, and the removal of the body.

not hearsay as they were not offered to prove the truth of the matter asserted. For example, Nancy's statement that she was "getting over on" a man in the bar, as well as statements made by the Rosarios in their attempt to coax the victim into giving them money for beer, and the victim's refusal, were not relevant because of their substance, but rather, because they were made. *See Commonwealth v. Lebo*, 405 Pa.Super. 316, 323, 592 A.2d 353, 357 (1991), *appeal denied*, 530 Pa. 640, 607 A.2d 251 (1992). Similarly, Nancy's directive to Rice and Adams to go into the bedroom immediately before the attack, and Edwardo's question as to where they were going when they left the apartment were not hearsay.

Rice's statement to Adams that they should go to Rice's house because the Rosarios did not know where he lived was not offered to prove the truth of the matter asserted. The Commonwealth was certainly not attempting to prove that the Rosarios did not know where Rice lived.

■ Furthermore, statements implicating Nancy were consistent with the defense theory that Nancy was the perpetrator of the crime. Therefore, counsel reasonably did not object to or assert as error the admission of those statements. Moreover, Nancy's and Edwardo's statements to the police in which they denied, directly or by omission, involvement in or knowledge of Scott's murder were clearly not hearsay as they were not offered to prove the truth of the matter asserted, that is, that appellant's siblings were not involved in the murder.

Statements made by Trooper Joy to appellant prior to his arrest regarding allegations that he was present in Nancy's apartment when Scott was there were relevant for reasons other than to prove the truth of the matter asserted. "[T]he introduction of out-of-court statements for the purpose of showing that based on information contained in the statements, the police followed a certain course of conduct that led to the defendant's arrest [is proper]." *Commonwealth v. Rivera*, 409 Pa.Super. 120, 130, 597 A.2d 690, 695 (1991) (quoting *Commonwealth v. Underwood*, 347 Pa.Super. 256,

261, 500 A.2d 820, 822 (1985)). Moreover, we find bewildering the challenge to Trooper Joy's statements to appellant regarding his opinion that appellant was being untruthful and, if so, he was unlawfully obstructing the investigation. Appellant subsequently admitted to being untruthful in his earlier statement to Trooper Joy.

 The victim's statement to a friend that he did not lose all his money gambling was hearsay as it was offered to prove that the victim was in possession of some amount of money. However, that statement was not prejudicial to appellant as other evidence revealed that the victim had money and that the Rosarios were aware of that fact. Appellant is not entitled to relief on this issue.

For the above reasons, we conclude that appellant's claims of trial court error and counsel's ineffectiveness are without merit. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

WIEAND, J., filed a dissenting opinion in which Cavanaugh, McEwen and Kelly, JJ. joined.

WIEAND, Judge, dissenting.

The majority holds that even after a guilty plea has been accepted by a court following a determination that a factual basis exists therefor, the court may subsequently reject the guilty plea sua sponte because of information contained in a pre-sentence report. Because I believe this is contrary to the terms of 18 Pa.C.S. §§ 109 and 110, I must respectfully dissent from this part of the majority's decision.

On the evening of December 6, 1990, the appellant, Agustin Rosario, and his sister, Nancy Rosario, met Maurice Scott, a gentleman of seventy years, at Stanley's Cafe, a bar in Lancaster County. After Scott had purchased several drinks for appellant and his sister, he agreed to meet them later that evening at Nancy Rosario's apartment. When appellant and his sister returned to the sister's apartment, Nancy boasted that she had been "getting over" on a man she had just met at

a bar. When Scott arrived later that evening, he was met by appellant; appellant's sister; appellant's brother, Edwardo; James Adams; and James Rice. The group consumed a six pack of beer which Scott had purchased, and later the Rosarios were able to persuade Scott to give them additional money to buy a second six pack of beer. When a request was later made for additional moneys, however, Scott refused. Shortly thereafter, he fell asleep on a couch.

The Rosarios then began to speak together in Spanish so that Adams and Rice, who did not speak Spanish, were not able to understand what was being said. Adams and Rice were told to go into the bedroom, and the door was closed. While in the bedroom, they heard strange noises, and when the door was opened a few inches, they saw Nancy Rosario hitting Scott on the head. Before they could see more, the door was abruptly pulled shut. A few minutes later, however, appellant entered the bedroom and said, "I never did anything like this before." After appellant returned to the living room, Edwardo entered the bedroom and told Adams and Rice that Nancy was stabbing Scott with a knife. Adams and Rice then left the bedroom and saw Nancy Rosario repeatedly stab Scott in the chest. They said that when Scott attempted to struggle, he was restrained by Edwardo Rosario. While this occurred, appellant stood nearby and watched. Adams and Rice then fled. After they had gone, according to other evidence, the Rosarios removed Scott's dead body and cleaned the apartment. Scott's body was found the following morning in his car, which was standing in an alley behind Stanley's Cafe. Scott's wallet was empty.

The police investigation quickly turned toward Nancy Rosario's apartment. On the afternoon of December 7, 1990, appellant agreed to accompany a state trooper to the local police station for questioning. There, he denied that Scott had ever been in his sister's apartment. After being arrested later the same evening, however, he gave a statement implicating his sister and denying his own involvement.

Appellant was subsequently charged with murder and criminal conspiracy. Prior to trial, however, the Commonwealth

caused the information to be amended by adding an additional count which charged appellant with hindering apprehension or prosecution in violation of 18 Pa.C.S. § 5105(a)(3). Pursuant to a negotiated plea agreement, appellant then entered a plea of guilty to hindering apprehension or prosecution, and the charges of murder and conspiracy were to be nol prossed.

At the guilty plea hearing, the prosecuting attorney represented to the court that a factual basis for the guilty plea existed as follows:

> Yes, Your Honor, on the morning of December 7th, 1990, at 324 Front Street, apartment three, in Marietta, Pennsylvania, Nancy Rosario, that's the resident—Nancy Rosario, the sister of these two defendants—approximately one to two o'clock in the morning killed an individual by the name of Maurice Scott by stabbing him multiple times in the body.
>
> The role of these two defendants, who happened to be visiting her at that particular time, their [sic] being residents of the City of Lancaster, were [sic] that they helped dispose of his body after he was killed.

Appellant did not state agreement or disagreement with these facts, and the trial court, as the record unequivocally discloses, accepted appellant's guilty plea. When the trial court subsequently reviewed a pre-sentence report, however, the court learned that there was evidence from which it might be inferred that appellant had been part of a conspiracy to rob the victim at the time of his death.[1] On this basis the trial court sua sponte withdrew its acceptance of appellant's guilty plea. It said there was not a factual basis for the guilty plea even though it had previously found that a factual basis existed. The court directed that appellant be tried on all counts of the information.

Appellant's counsel did not assert the bar of 18 Pa.C.S. § 110, and appellant was tried and found guilty of murder of the second degree and criminal conspiracy. On direct appeal, he is represented by new counsel who argues that trial counsel

---

1. There was also a public outcry regarding appellant's being allowed to plead to a lesser offense.

was ineffective for failing to raise the defense of Section 110 of the Crimes Code.[2]

In order to establish a claim for ineffective assistance of counsel, appellant must show that: (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have a reasonable basis designed to effectuate appellant's interests; and (3) counsel's ineffectiveness prejudiced appellant. *Commonwealth v. Marshall,* 534 Pa. 488, 496, 633 A.2d 1100, 1104 (1993); *Commonwealth v. Williams,* 532 Pa. 265, 274, 615 A.2d 716, 720 (1992); *Commonwealth v. Stokes,* 532 Pa. 242, 250, 615 A.2d 704, 708 (1992).

Section 110 of the Crimes Code, most accurately described as a compulsory joinder provision, "bars a subsequent prosecution for violation of a different statutory provision if the defendant has already been either acquitted or convicted of another offense which arose from the same criminal episode." *Commonwealth v. Bellezza,* 412 Pa.Super. 469, 474, 603 A.2d 1031, 1034 (1992). See also: *Commonwealth v. Kresge,* 317 Pa.Super. 405, 410, 464 A.2d 384, 388 (1983). Section 109 defines a conviction to include a *"guilty plea that has been accepted by the court."* 18 Pa.C.S. § 109(3) (emphasis added). Appellant contends that since his guilty plea had been unequivocally accepted by the trial court, he had been convicted under Section 109; and, according to Section 110, he could not be prosecuted thereafter on other charges arising from the same criminal episode.

Nancy Rosario, the sister of appellant, entered a plea of guilty to murder of the third degree. After accepting the guilty plea, however, the court changed its mind and rejected the plea under circumstances similar to those in the instant case. The trial court then denied a motion to dismiss on grounds of double jeopardy and Section 110 of the Crimes Code. On appeal, a panel of the Superior Court affirmed. See: *Commonwealth v. [Nancy] Rosario,* 418 Pa.Super. 196, 613 A.2d 1244 (1992). The Superior Court held that a trial

---

2. Trial counsel had argued that appellant's trial violated principles of double jeopardy. This argument, however, was decided against appellant and is not now pursued on appeal.

court can always withdraw, prior to sentencing, its acceptance of a plea of guilty. In interpreting Section 109 of the Crimes Code, the Court said that the acceptance of a plea of guilty by a court continues only *"[s]o long as it stands* and is capable of supporting a judgment [of sentence]." *Id.* at 205, 613 A.2d at 1249, quoting Model Penal Code, § 1.09, Comment. Section 109, the Court concluded, does not "speak to the power of the court to strike a plea of guilty before sentence." *Commonwealth v. [Nancy] Rosario, supra.* The Supreme Court, however, has granted allocatur and already has heard argument. See: *Commonwealth v. [Nancy] Rosario,* 535 Pa. 646, 633 A.2d 151 (1993). A decision is expected shortly.

The Nancy *Rosario* case is in conflict with another decision of the Superior Court in *Commonwealth v. Kotz,* 411 Pa.Super. 319, 601 A.2d 811 (1992). In *Kotz,* another panel of the Superior Court held that a trial court could not sua sponte, prior to sentencing, vacate a plea of guilty which the court had already accepted. The Court said: "Absent [ ] an application/motion by the defendant, a guilty plea, which is spoken of in terms of a verdict of guilty, may not be removed by a trial court sua sponte." *Id.* at 326, 601 A.2d at 815.

Appellant argues that the Nancy *Rosario* case is also in conflict with the decision of the Superior Court in *Commonwealth v. Branch,* 417 Pa.Super. 571, 612 A.2d 1085 (1992). In *Branch,* however, the trial court had not accepted the plea of guilty but had deferred its decision to accept or not accept the plea bargain until after a pre-sentence investigation had been completed. The Superior Court held that, under such circumstances, the trial court could subsequently reject the defendant's guilty plea without violating principles of double jeopardy. Factually, therefore, the decisions in *Branch* and *Rosario* are distinguishable. They are also distinguishable in that the *Branch* court's decision was based on principles of double jeopardy. That court did not consider the statutory language contained in Sections 109 and 110 of the Crimes Code. But see: *Commonwealth v. Branch, supra* at 579–581, 612 A.2d at 1089–1090 (Concurring Opinion by Johnson, J.).

Nevertheless, it must be conceded that the lines of reasoning followed by the *Rosario* and *Branch* courts are at variance. Despite the express language of section 109 that a conviction includes "a guilty plea that has been accepted by the court," the *Rosario* court held that there can be no conviction for purposes of applying Section 110 until there has been a judgment of sentence. The *Branch* court, however, followed decisions holding that if a plea of guilty has been entered and accepted by the trial court, there is a final determination of guilt and jeopardy has attached. "Rejecting a guilty plea after acceptance and setting the case for trial constitutes double jeopardy." 22 C.J.S. Criminal Law § 223 at p. 271. See: *United States v. Cruz*, 709 F.2d 111 (1st Cir.1983) (double jeopardy violated where, after accepting guilty plea, court rejected plea solely on information in presentence report); *United States v. Hecht*, 638 F.2d 651 (3rd Cir.1981) (double jeopardy violated where, after accepting guilty plea, court vacated plea after concluding erroneously there was no factual basis for it).

In my judgment, the reasoning of the *Kotz* and *Branch* courts is more in keeping with Sections 109 and 110 of the Crimes Code. It is also in accord with the federal decisions which have found double jeopardy violations where a court, after accepting a plea of guilty, has later rejected the plea sua sponte. See: *United States v. Cruz, supra; United States v. Hecht, supra.*

These cases recognize, however, that " 'even if jeopardy attaches at the time of acceptance of the plea, it does not attach irrevocably and may be released if there is manifest necessity.' " *Commonwealth v. Branch, supra,* 417 Pa.Super. at 577, 612 A.2d at 1088, quoting 22 C.J.S. Criminal Law, § 223. Similarly, for purposes of interpreting 18 Pa.C.S. §§ 109 and 110, an acceptance of a plea of guilty is not irrevocable and may be withdrawn in cases of manifest necessity.

Here, however, there is no such manifest necessity. It may be, as the trial court has suggested, that it was misled by the factual basis presented prior to its acceptance of appellant's

plea of guilty to hindering prosecution. If there was any misrepresentation of the facts, however, that misrepresentation was made by the prosecuting attorney. The record is clear that neither the defendant nor his counsel contributed to any misrepresentation of the facts. Throughout the subsequent trial, moreover, it was always the position of the defendant that he had not participated in the killing and that his only offense had been in helping his sister conceal the body after Scott had been killed.

Contrary to the majority's view, I find no conflict between Sections 109 and 110 of the Crimes Code and Pa.R.Crim.P. 320. All can be read in pari materia. See: *Lohmiller v. Weidenbaugh*, 503 Pa. 329, 332, 469 A.2d 578, 580 (1983) (where an act of the general assembly and a rule of procedure relate to the same subject, they must be read in pari materia so as to give effect to both). Should there be a conflict, however, the plain meaning of the substantive rule must be given preference over the procedural rule. See: *Shapiro v. Magaziner*, 418 Pa. 278, 286, 210 A.2d 890, 895 (1965) (Supreme Court will not construe procedural rule in way which would contradict an express statute on the same subject). See also: *Marquez v. Hahnemann Med. College & Hosp. of Phila.*, 56 Pa.Commw. 188, 194, 424 A.2d 975, 978 (1981) (procedural rules were not intended to change substantive rights). This is particularly so where the substantive rule is based on constitutional principles of double jeopardy. See: *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 64, 436 A.2d 147, 153 (1981) (In Pennsylvania, the Supreme Court's rule making authority is limited by the Constitution so that procedural rules may not interfere with substantive rights).

Section 109 of the Crimes Code provides that a conviction occurred when appellant's plea of guilty to hindering prosecution was accepted by the court. Section 110 of the Crimes Code provides that following a conviction for hindering prosecution, appellant could not thereafter be prosecuted for any other offenses arising out of the same criminal episode. Fundamental principles of statutory construction prevent a court from disregarding the clear and plain meaning of a statute.

*Gutman v. Worldwide Ins. Co.,* 428 Pa.Super. 309, 313, 630 A.2d 1263, 1265 (1993). See also: *Hanley and Bird v. Commonwealth,* 139 Pa.Commw. 563, 572, 590 A.2d 1382, 1388 (1991) (statute must be given its plain and obvious meaning where words are unambiguous). Moreover, the decision in *Kotz* holds and the decision in *Branch* implies by dictum that the trial court could not sua sponte withdraw its acceptance of appellant's guilty plea and require him to stand trial on additional charges arising from the same criminal episode.

When the trial court withdrew its acceptance of appellant's guilty plea and ordered a trial, appellant's trial counsel objected on double jeopardy grounds but did not assert as a bar thereto the provisions of Section 110 of the Crimes Code. In post-trial motions, counsel also asserted that a violation of double jeopardy had occurred as a result of the court's order. The bar of Section 110 of the Crimes Code, however, was not raised until the instant appeal. It is perhaps difficult to believe that trial counsel could have had any reasonable basis calculated to serve his client's interests for failing to assert the bar of Section 110 of the Crimes Code. However, there has been no evidentiary hearing; and, therefore, counsel has not had an opportunity to offer an explanation for his conduct. Under these circumstances, I would remand for an evidentiary hearing to determine appellant's contention that trial counsel's assistance was constitutionally ineffective.[3]

Cavanaugh, McEwen and Kelly, JJ. joined.

---

**3.** I agree with the majority that there is no merit in appellant's remaining contentions.