J-S59034-19; J-S59035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MALIK NOEL | : | |
| | : | |
| Appellant | : | No. 1235 EDA 2017 |

Appeal from the Judgment of Sentence August 26, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002131-2011,
CP-51-CR-0002134-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MALIK NOEL | : | |
| | : | |
| Appellant | : | No. 3434 EDA 2017 |

Appeal from the Judgment of Sentence August 26, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002130-2011

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    Filed: August 20, 2020

Malik Noel appeals from the judgment of sentence entered following his convictions for Firearms not to be Carried Without a License, Carrying a Firearm in Public in Philadelphia, and Possession of a Firearm by a Person Prohibited.[1] Noel challenges the sufficiency of the evidence and argues the

---

[1] 18 Pa.C.S.A. § 6106(a)(1), 6108, and 6105(a)(1), respectively.

trial court abused its discretion when it instructed the jury that Noel's flight could be considered as evidence of consciousness of guilt. We affirm.

Noel was arrested and charged in November 2010 after he engaged in a shootout with two other men. The trial court set forth the factual history of the case, which we adopt and incorporate herein. Trial Court Opinion, filed Mar. 2019, at 3-7 ("1925(a) Op."). We will provide a brief summary here.

At Noel's jury trial, the Commonwealth presented evidence of the following. Police Officers Cyrus Pollard and Robert Ellis heard gunshots while on patrol. They proceeded toward the sound, and observed two men shooting into a red Jeep, which police later determined Noel was driving. Officer Ellis ordered the men to stop, and he pursued the men when they failed to comply and fled. Officer Ellis testified that he saw a muzzle flash come from the Jeep.

Officer Pollard testified that as the Jeep drove off, he saw gunshots coming from the vehicle. He chased the Jeep, which crashed. Noel jumped out of the passenger-side window and ran.

Officer Clyde Frasier of the crime scene unit testified that he inspected the Jeep, and noticed the rear window was blown out and there were three spent .45-caliber shell casings in the rear cargo area. The firearms recovered from the scene were not .45 caliber. He also identified bullet holes on the vehicle, which he found were both exit and entrance holes.

When the trial court instructed the jury, it gave the following instruction about credibility and weight determinations and the jury's consideration of the testimony that Noel fled:

> Now, members of the jury, there was evidence and testimony that tended to show that the defendant fled from the police. The credibility, weight, and effect of this evidence is for you to decide. Generally speaking, when a crime has been committed and a person thinks he or she may be accused of committing it and he or she flees or conceals himself or herself, such flight or concealment is a circumstance tending to prove the person is conscious of guilt. Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide for some other motive and may do so even though innocent.
>
> Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case; especially upon motive that may have prompted the flight or concealment. You may not find the defendant guilty solely on the basis of evidence of flight or concealment.

N.T., 9/14/15, at 106-07. Noel objected to this instruction, and the court overruled the objection. N.T., 9/11/15, at 94-99.

The jury found Noel guilty of Firearms not to be Carried without a License and Carrying a Firearm in Public in Philadelphia, and the judge, sitting without a jury, convicted him of Possession of a Firearm by a Person Prohibited. The court sentenced Noel in August 2016 to five to 10 years' incarceration for Possession of a Firearm by a Person Prohibited, three and a half to seven years in prison for the Firearms not to be Carried Without a License conviction, and five years' probation for Carrying a Firearm in Public in Philadelphia. The court ordered the sentences to run consecutively, for an aggregate sentence of eight and a half to 17 years in prison followed by five years of probation. Noel filed post-sentence motions, which were denied by

- 3 -

operation of law. After Noel's appellate rights were reinstated following the filing of a timely Post Conviction Relief Act petition, Noel filed this appeal.[2]

Noel raises the following issues:

> 1. Was the evidence insufficient to support all of [Noel's] convictions?
>
> 2. Did the trial court abuse its discretion in charging the jury on flight under the circumstances of this case?

Noel's Br. at 2 (suggested answers omitted).

Noel first challenges the sufficiency of the evidence supporting the convictions for all three offenses, claiming the Commonwealth failed to establish he possessed a firearm. "When reviewing a sufficiency of the evidence claim, we must determine whether, when viewed in the light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt." **Commonwealth v. Dix**, 207 A.3d 383, 390 (Pa.Super. 2019). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Id.** (quoting **Brown**, 23 A.3d 544, 559 (Pa.Super. 2011) (*en banc*)).

Each of the crimes for which Noel was found guilty have a possessory element. To obtain a conviction for Possession of a Firearm by a Person

---

[2] Noel filed a notice of appeal at each docket number, listing three docket numbers. Because he filed a separate notice at each docket, we will not quash this appeal. **See Commonwealth v. Johnson**, --- A.3d ----, 2020 WL 3869723, at *4-5 (Pa.Super. July 9, 2020) (*en banc*).

Prohibited, the Commonwealth must prove that "the defendant possessed a firearm and that he was convicted of an enumerated offense that prohibits him from possessing, using, controlling, or transferring a firearm." *Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009); 18 Pa.C.S.A. § 6105. Firearms not to be Carried Without a License requires proof that the defendant "carrie[d] a firearm in any vehicle or . . . carrie[d] a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license." 18 Pa.C.S.A. § 6106(a)(1). Carrying a Firearm in Public in Philadelphia obliges the Commonwealth to prove that the defendant "carr[ied] a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class," without either a license to do so or a valid exemption from licensing. 18 Pa.C.S.A. § 6108.

Noel does not dispute that he was barred from possessing a firearm, that he had no license to possess a firearm, or that the incident occurred in Philadelphia. Rather, he claims that the convictions cannot stand because the Commonwealth failed to establish he possessed a firearm. He points out that no one testified they saw him in possession of a gun, firing a gun, or disposing of a gun. He adds that there was no evidence he returned fire at the men shooting at his car, and claims that the ballistics evidence did not support a finding that gunshots came from within the car. He further notes that, although the police officers searched for a gun he might have used, they did not find one.

Because Noel was not in physical possession of a firearm, the Commonwealth had to establish he had constructive possession. **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa.Super. 2013). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." **Commonwealth v. Parker**, 847 A.2d 745, 750 (Pa.Super.2004) (citing **Commonwealth v. Thompson**, 779 A.2d 1195, 1199 (Pa.Super.2001)). Constructive possession "may be established by the totality of the circumstances." **Id.** (quoting **Thompson**, 779 A.2d at 1199).

The trial court concluded the Commonwealth presented sufficient evidence that Noel was in constructive possession of a firearm. It explained that police officers had testified that they saw muzzle flashes coming from inside a vehicle solely occupied by Noel and that one of the officers said he saw the rear window blow out simultaneously with the muzzle flash. The court also pointed out that the officers had found shell casings inside the vehicle that did not match any of the firearms recovered. After reviewing the trial court's opinion, the record, the parties' briefs, and the relevant law, we agree with the trial court. Accordingly, we affirm based on the well-reasoned opinion of the Honorable Angelo J. Foglietta, which we adopt. **See** Trial Court Opinion, filed Mar. 2019, at 3-7 ("1925(a) Op.") at 2-8.

Noel next claims the court abused its discretion when it instructed the jury that his flight could be considered as evidence of consciousness of guilt. He claims the Commonwealth failed to present evidence that he knew the

police were pursuing him. He asserts the officers did not identify themselves, and he was being actively shot at by other individuals when the officers arrived. He argues that when he realized he was safe, and his assailants were not pursuing him, he returned to the scene, met Officer Pollard, and complied with police orders.

Our standard of review of a court's decision on jury instructions "is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Yale*, 150 A.3d 979, 983 (Pa.Super. 2016) (citation and brackets omitted). "A jury instruction is proper if supported by the evidence of record." *Commonwealth v. Clark*, 961 A.2d 80, 92 (Pa. 2008).

A flight instruction is proper where a person, with a reason to know that he was wanted in connection with a crime, flees from law enforcement. *Commonwealth v. Tha*, 64 A.3d 704, 714 (Pa.Super. 2013) (citing *Commonwealth v. Harvey*, 526 A.2d 330, 334 (Pa. 1987)). As the Pennsylvania Supreme Court has explained, "When a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis [of a conviction] in connection with other proof from which guilt may be inferred." *Clark*, 961 A.2d at 92 (quoting *Commonwealth v. Rios*, 684 A.2d 1025, 1035 (Pa, 1996)) (alteration in original).

Here, the trial court concluded the flight-as-consciousness-of-guilt instruction was appropriate because the area was well lit, the officers were in

full uniform and a marked patrol vehicle, and, after Noel drove away from the scene, he got out of the vehicle and attempted to flee on foot. The court found the fact that he later returned did not alter that he "initially exited the vehicle and proceeded to run away from a police officer who was in pursuit." 1925(a) Op. at 12. Following a review of the record, the applicable law, the briefs, and the trial court opinion, we discern no abuse of discretion. We affirm on the basis of the trial court opinion. ***Id.*** at 8-12.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/20

**COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY** FILED
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**

2019 MAR 28 AM 10: 31

| | | |
|---|---|---|
| COMMONWEALTH OF PA | : | CP-51-CR-0002130-2011 |
| | : | CP-51-CR-0002131-2011 |
| | : | CP-51-CR-0002134-2011 |
| | | |
| v. | : | CRIMINAL TRIAL DIVISION |
| | | |
| MALIK NOEL | : | SUPERIOR COURT DOCKET NO.: |
| | | |
| | : | 1235 EDA 2017 |
| | : | 3434 EDA 2017 |

## OPINION OF THE TRIAL COURT

This is the appeal of the defendant, Malik Noel, who was found guilty of possession of a firearm by persons prohibited[1], firearms not to be carried without a license[2], and carrying a firearm in public in Philadelphia County[3]. The Defendant was found guilty of the latter two crimes in a jury trial taking place from September 9, 2015 to September 14, 2015. Thereafter, in a non-jury trial, defendant was found guilty by this Court on the charge of possession of a firearm by a prohibited person. The defendant was found not guilty on several other charges and many others were nolle prossed.

On appeal, the Defendant raises two (2) issues:

1. The evidence was insufficient to support Defendant's firearms convictions because nobody ever saw him with a firearm and because the evidence was inconclusive as to whether a muzzle flash came from the vehicle he was in, and because the ballistics evidence did not support an

---

[1] 18 Pa.C.S.A. § 6105(a)(1)
[2] 18 Pa.C.S.A. § 6106(a)(1)
[3] 18 Pa.C.S.A. § 6108

1

inference that shots were fired from inside the Jeep as the expert testified that the bullets coming from the Jeep were fired from outside the Jeep.

2. This Court erred by giving the flight charge to the jury because the evidence did not support the notion that Defendant was fleeing from the police but rather that he was running for his life after being repeatedly shot.

For the reasons set forth herein, it is respectfully requested that the Defendant's findings of guilt be affirmed on appeal as the issues raised do not warrant relief. The evidence presented at trial was sufficient to prove that the Defendant did, in fact, fire a weapon from inside of the vehicle he occupied and, further, that his actions on the evening in question could lead the jury to conclude that he was attempting to flee from police who were in pursuit.

The defendant has raised an issue on appeal as to the sufficiency of the evidence presented at trial for the firearm crimes upon which he was found guilty by the jury, and subsequently by the Trial Court. A review of the trial testimony clearly establishes that the Commonwealth met its burden in proving the elements of each of these crimes as charged and the finding of guilt on each charge was proper, appropriate and based upon the totality of the evidence in weight, sufficiency and credibility of the witnesses as set forth below.

In evaluating any type sufficiency claim, the court must view the evidence in the light most favorable to the Commonwealth as the verdict winner and also drawing all rational evidentiary inferences to determine whether a reasonable jury could have found that each element of the crimes charged were established beyond a reasonable doubt. ***Commonwealth v. Patterson***, 940 A.2d 493, 500 (Pa.Super. 2007) and ***Commonwealth v. Rosario***, 438 Pa.Super. 241, 260-61, 652 A.2d 354, 364 (1994). A court reviewing a sufficiency challenge "... may not weigh the evidence and substitute [the court's] judgment for the fact-finder." ***Commonwealth v. Orr***, 38 A.3d 868, 872

2

(Pa.Super. 2011), *citing Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011); *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005).

The evidence at trial need not "… preclude every possibility of innocence, and the fact finder is free to resolve any doubts regarding a defendant's guilt." *Hansley*, 24 A.3d at 416. Although a conviction must be based on "… more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Davis*, 861 A.2d 310, 323 (2004) *citing Commonwealth v. Coon*, 695 A.2d 794, 797 (1997). Further "if the record contains support for the convictions, they may not be disturbed." *Id.* 861 A.2d at 323-24; *Commonwealth v. Marks*, 704 A.2d 1095, 1098 (Pa.Super. 1997). These long settled principles of law governing a sufficiency challenge are equally applicable to cases where the evidence is circumstantial rather than direct, provided that the combination of inferential evidence links the accused to the criminality and/or establishes the crime's requisite element(s) beyond a reasonable doubt. *Commonwealth v. Cox*, 546 Pa. 515, 528, 686 A.2d 1279, 1285 (1996).

In deciding whether as a matter of law that the trial evidence was sufficient to sustain a conviction, it must be remembered that "[w]hen evaluating the credibility and weight of the evidence, the fact finder is free to believe all, part or none of the evidence." *Commonwealth v. Patterson, supra*, 940 A.2d at 500; *Commonwealth v. Emler*, 903 A.2d 1273, 1276-77 (Pa.Super. 2006). Furthermore, the jury is tasked with being the "… sole judges of the credibility and weight of all testimony" and is certainly free to reject or accept, in whole or part, the testimony of all witnesses. Regarding the offered testimony, the jury in making their decision may choose what they value and discount what they find unpersuasive.

The events subject to this appeal arise from an incident occurring on November 18, 2010 and involved a gunfight between several individuals in a Philadelphia residential neighborhood.

3

At trial, the Commonwealth alleged and proved that the defendant, Malik Noel, was one of the shooters directly involved in the gunfight on that night.

On the above date, Philadelphia Police Officers Cyrus Pollard and Robert Ellis were on patrol in and around the area of 27th and Wharton Streets. They were in a marked patrol car and were dressed in full police uniform. Upon hearing the gunshots, they proceeded towards the sound of the gunfire. As they turned their patrol vehicle onto 27th Street, they observed two men shooting into a red Jeep. The driver of the Jeep was later determined to be the Defendant. Upon seeing this, Officer Ellis jumped out the vehicle and ordered the two men that he had seen shooting into the vehicle to drop their weapons. Instead of complying with his commands, the men begin shooting at him. Office Ellis took cover and returned fire. At that point, those two individuals fled from the scene. Officer Ellis pursued after them and repeatedly exchanged gunfire. One of these shooters was arrested. The other evaded apprehension.

Since the Defendant has raised issues directly related to the events involving his possession and discharge of a firearm from inside the vehicle, the Commonwealth elicited at trial the following testimony which directly refutes the claims that the evidence was insufficient to convict him of the firearm crimes.

Officer Robert Ellis testified that during the gunfight in which he was involved, at one point during his exchanges of gunfire, he looked towards the Jeep, and all he could see "from the Jeep is a large noise and a large bang, and then I can see nothing but a muzzle flash." N.T., 09-09-2015, Pg. 63 L. 8-10. He supported his testimony in more detail under further questioning, stating as he looked back over towards the Jeep, he heard "a loud bang, and then the back window is out. And all I can see at that time is muzzle flash." N.T., 09-09-2015, Pg. 68 L. 7-9. Officer Ellis indicated he was "looking right at the Jeep. That's when I seen [sic] the muzzle flash." N.T., 09-

4

09-2015, Pg. 88 L. 9-10. Officer Ellis' testimony at trial was consistent with the statement he had given to Internal Affairs on March 10, 2011. N.T., 09-09-2015, Pg. 91 L. 21 to Pg. 92, L. 17. Officer Ellis's testimony remained consistent on cross-examination by defense counsel. On redirect, Officer Ellis, once again, detailed his observations regarding the muzzle flash inside the vehicle, stating:

Q. And was there anyone else in the vicinity at the time of that muzzle flash besides someone in the Jeep, that you knew of?
A. There was no one else. Just whoever was in the Jeep and myself. And the other guys were already gone.
Q. At the point when you saw the muzzle flash, could it have come from anywhere else but inside the Jeep?
A. Inside the Jeep.

N.T., 09-09-2015, Pg. 119, L. 6-13.

The Commonwealth next presented the testimony of Officer Cyrus Pollard, Officer Ellis' partner on the evening in question. Officer Pollard described the events as follows:

… Me and my partner were driving on Wharton Street going eastbound. We heard gunshots. So once we got to the corner of 27th and Wharton, we took a look to the right. We see a male shooting inside of a burgundy vehicle. My partner had jumped out of the car before I stopped, and he told the men to put their guns down. At that time I was trying to put my car in park. The male that was shooting inside of the vehicle turned towards my partner and started shooting at him. My partner returned fire. I got out of my vehicle to go behind my partner.
Finally, the two males took off and ran up westbound on Sears Street. As my partner got to the corner of Sears Street, the burgundy vehicle took off in a catty-corner motion. As he was pulling off, there were gunshots coming out of the vehicle, at least four, aiming towards my partner. I was 3 feet behind my partner. And at that time that's when I got back in my vehicle and went after the burgundy vehicle. The burgundy vehicle had crashed, and this young man right here jumped out of the passenger's side and started

5

running up Earp Street.

N.T., 09-10-2015, Pg. 10, L. 3- 24.

When asked how did he know that the shots were coming from inside the Jeep, Officer

Pollard testified:

Q. So at the point when the gunshots start, how do you know that it's gunshots coming out of the back of the Jeep?
A. The back window blew out.
Q. Were you able to see anything else indicative of gunshots coming out of the Jeep?
A. Yes; muzzle flash.
Q. Where exactly was that muzzle flash that you

...

could see?
A. Coming from the front of the vehicle. Someone was sitting inside the front seat.
Q. Just so I'm clear, you have like a flat screen TV view of the back of the Jeep?
A. Yes.
Q. After that window got blown out were you able to see through the Jeep?
A. Yes.
Q. Were you able to see how many people were in the Jeep at that point?
A. At that point, no.
Q. Were you able to see if someone was in the driver's seat?
A. Yes.
Q. Now, how many shots do you recall hearing coming out of the back of the Jeep?
A. Four.

N.T., 09-10-2015, Pg. 22, L. 18 to Pg. 23, L. 18.

Neither officer testified that they saw the Defendant in actual possession of a firearm on

the evening in question. Several weapons were recovered during the course of the investigation,

6

however, none were a .45 caliber, which were of the type of casings found in the vehicle as described below.

The Commonwealth next presented the testimony of Officer Clyde Frasier of the Crime Scene Unit, who inspected the vehicle where it came to rest on the night in question. He noticed the rear window was blown out. N.T., 09-10-2015, Pg. 182, L. 12-15. He also identified and photographed three fired shell casings in the rear interior cargo area of the Jeep. N.T., 09-10-2015, Pg. 184, L. 15-24. These casings were all determined to be .45 auto fired cartridge casings. N.T., 09-10-2015, Pg. 212, L. 20-24. None of the firearms recovered were a .45 caliber. N.T., 09-10-2015, Pg. 215, L. 2-15. He also identified and photographed several bullet holes on the vehicle which he concluded were both entrance and exits holes. N.T., 09-10-2015, Pg. 188, L. 3-8.

Officer John Taggart of the Crime Scene Unit performed a more detailed analysis of the Jeep after it had been impounded for further inspection. Officer Taggart's trial testimony was consistent with that of Officer Frasier and confirmed that the fired casings found in the back of the vehicle in the cargo area were .45 caliber shells. He also performed bullet trajectories based upon the bullet holes in the Jeep to determine both exit and entrance holes. N.T., 09-11-2015, Pgs. 21 to 70.

Based upon the forgoing testimony, a jury could reasonably conclude by the direct and circumstantial evidence presented at trial by the Commonwealth's witnesses that the defendant was in possession of a firearm on the night in question and did fire that weapon from inside the Jeep through its rear window. Officers Ellis and Pollard saw muzzle flashes coming from the inside. Officer Ellis saw the rear window blow out when hearing the gunshots and seeing the flashes. Three shell casings all of the same caliber were found inside the Jeep occupied solely by the defendant. Clearly, despite not actually seeing a weapon in the defendant's hand and a weapon

7

not being located that was a match for the shell casings found in the Jeep, the jury could reasonably infer that the defendant had possessed and fired a weapon on the night in question. Therefore, this direct and circumstantial evidence when taken as a whole was sufficient to support a finding of guilt on the weapons charges.

The second issue raised by the defendant relates to this Court's charge to the jury in regard to the defendant's actions during and after the shooting took place. The defendant asserts that this Court erred in instructing the jury that they could consider his actions and behavior on the evening in question as evidence of consciousness of guilt.

It is well settled that jury instructions must be supported by the evidence of record as instructions regarding matters that are not before the court serve no purpose but to confuse the jury. *Commonwealth v. Washington*, 547 Pa. 563, 692 A.2d 1024 (1997). Generally, a trial court can give a flight/concealment jury charge when a person commits a crime, knows that he is a suspect, and then takes some action to flee or conceal himself, because such conduct is evidence of consciousness of guilt, which may form the basis, along with other proof, from which guilt may be inferred. *Commonwealth v. Hartey*, 424 Pa.Super. 29, 40, 621 A.2d 1023, 1029 (1993), appeal denied, 540 Pa. 611, 656 A.2d 117 (1994) (citation omitted). It is permissible to infer that a defendant knows he is wanted for a crime from the circumstances attendant to his flight. *Commonwealth v. Rios*, 684 A.2d 1025, 1035 (Pa. 1996) (citing *Commonwealth v. Tinsley*, 350 A.2d 791, 792-93 (Pa. 1976)). As set forth by our Supreme Court in *Tinsley*, supra., a flight instruction is proper even when no direct evidence was presented at trial to establish the defendant had actual knowledge that he was wanted by police, when there was "unquestionably circumstantial proof of this fact." *Id.*, at 793

8

Based upon the evidence presented, this Court determined that the standard instruction for

Flight or Concealment as Showing Consciousness of Guilt (SSJI Crim. 3.14) was appropriate for

the jury's consideration. In regard to this charge, this Court stated:

Now, members of the jury, there was evidence and testimony that tended to show that the defendant fled from the police. The credibility, weight, and effect of this evidence is for you to decide. Generally speaking, when a crime has been committed and a person thinks he or she may be accused of committing it and he or she flees or conceals himself or herself, such flight or concealment is a circumstance tending to prove the person is conscious of guilt. Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide for some other motive and may do so even though innocent. Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case; especially upon

...

motive that may have prompted the flight or concealment. You may not find the defendant guilty solely on the basis of evidence of flight or concealment.

N.T. 9-14-15, pgs 106 -107.

Defendant's counsel had properly preserved his objection to this charge during the

charging conference on September 11, 2015. N.T. 9-11-15, P. 94, L. 14 to P. 99, L. 18.

In explaining the reason for this Court's determination for giving this charge, it was

succinctly stated as follows:

THE COURT: And the reason why I agreed to give that charge was -- putting aside the fact of the vehicle leaving the scene and

9

crashing, after that there was testimony from a police officer that the defendant got up and ran away after the two alleged assailants were shooting at the car. He left the scene and was no longer at the scene of the vehicle. And I believe both Officer Pollard and Officer Ellis testified that they identified themselves as police officers, and they were both in full uniform.

With regard to Police Officer Pollard, I believe he indicated that he also told the defendant to stop, and the defendant kept on running. The defendant was then apprehended. And he just spoke about what happened on --

Is it Sears Street?

. . .

MS. McGLYNN: Earp Street, Your Honor.

THE COURT: Earp Street.

And it's a determination for the finder of fact, the jury can make, as to whether the reason that the defendant ran from the scene was because of what you said or because of consciousness of guilt. I'm not charging the jury that they must find that way. I mean, that's not what the charge says and I would never do that. It simply means that if they determine that the defendant fled the scene after knowing police officers were there and after the alleged assailants left the area, that they could reasonably conclude that the flight from that scene was done because of consciousness of guilt.

N.T., 9-11-15, P. 96, L. 8 to P. 97, L. 16

At trial, Officer Pollard, the officer who apprehended the Defendant, testified that he gave

chase to the Jeep. When he caught up to the vehicle near Earp Street:

A. As I was going towards Earp Street, I slowed down because I had to take a look inside the burgundy vehicle to make sure there wasn't anyone else in there. I took a look inside, and the vehicle was empty. As I went down Earp Street, Mr. Noel went halfway

10

[14] down the block. He had turned around and started coming
[15] back towards me, telling me he was shot. I had my
[16] weapon out. I told him to get to the ground. He got to
[17] the ground, and I cuffed him. And another officer
[18] showed up, and we had to take him to the hospital.

N.T., 09-10-2015, Pg. 11, L. 9-18.

In detailing the chase and apprehension, Officer Pollard stated that the Jeep had crashed into another vehicle after fleeing from the area of where the shooting took place. He testified his reason for pursuing the Jeep:

[2] Q. And what was your plan then? Where were you
[3] headed?
[4] A. I was heading for the Jeep since it fired out the
[5] vehicle.
[6] Q. And did you follow the Jeep all the way until it
[7] crashed in your car?
[8] A. Once it crashed, that's when I stopped my vehicle
[9] and hopped out.
[10] Q. Were you able to see all sides of the Jeep
[11] throughout this entire incident?
[12] A. Yes.
[13] Q. Other than the defendant getting out of the
[14] vehicle, did anyone else get out of the car?
[15] A. No.
[16] Q. Did any other doors open in the car?
[17] A. No.
[18] Q. And which side of the car did the defendant get
[19] out of?
[20] A. The front passenger's side.
[21] Q. And which direction did he run?
[22] A. He ran westbound onto Earp Street.
[23] Q. So he got out of the passenger's side, and then
[24] continued running in that direction.
[25] A. Yes.

N.T., 09-10-2015, Pg. 25, L. 2-25.

Under these circumstances, and in light of the facts presented at trial, it would be reasonable for a jury to infer that there was flight from the police. The area was well lit, the officers were in full police uniforms, and they had identified themselves as police to the defendant. Although it

11

may have been reasonable and justifiable for the defendant to flee from the scene while being shot at, after he has successfully fled and was out of the area of danger, he exited the vehicle and attempted to then flee on foot being pursued only by the police at that point. The fact that he then stopped and walked back to the arresting officer is of no consequence, as he had initially exited the vehicle and proceeded to run away from a police officer who was in pursuit. In light of these facts, the given charge was appropriate for a jury to consider the defendant's actions in order to infer his intent to escape from police as consciousness of his guilt.

In light of the foregoing, it is requested that the defendant's convictions be upheld and this Court's decisions be affirmed on appeal.

**BY THE COURT:**

_____ J.
ANGELO J. FOGLIETTA

Date: March 28, 2019

12

## Certificate of Service

On this date, the 29Th day of **March, 2019**, a true and correct copy of the attached

1925(b) Opinion was filed by this Court with the Criminal Appeals Unit for service upon the

counsel listed below via the Court's electronic filing system and First Class Mail, Postage Paid:

Hugh Burns, Esquire
Philadelphia District Attorney's Office
3 S Penn Sq
Philadelphia, PA 19107-3499


Todd Michael Mosser, Esq.
Mosser Legal PLLC
211 N 13th St - Ste 801
Philadelphia, PA 19107


_____ J.
ANGELO J. FOGLIETTA